UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KING, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>AXLEHIRE, INC.,<br><br>   Defendant. | Case No. 18-cv-01621-JD<br><br>**ORDER RE MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 40 |

In this putative employment class action, defendant AxleHire, Inc. has moved to compel arbitration of plaintiff Derion Davis's claims. Dkt. No. 40. The Court finds the motion suitable for decision without oral argument. Civ. L.R. 7-1(b). The motion is granted.

**BACKGROUND**

As alleged in the complaints, Davis has worked periodically as a driver for AxleHire since October 2016. He and the other named plaintiffs have sued on behalf of themselves and a putative class of AxleHire drivers under the California Labor Code and the Fair Labor Standards Act, 29 U.S.C. § 201, for misclassification as independent contractors, unpaid wages, and failure to provide meal and rest breaks, among other claims. They also allege racial discrimination under the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *See generally* Dkt. Nos. 36, 54.

Davis was a later addition as a plaintiff. He first appeared in an amended complaint filed with one of the original plaintiffs, Shemicka Johnson. Dkt. No. 36. Two other original plaintiffs, King and Barrera, went to arbitration on an individual basis only. Dkt. No. 34. AxleHire has not sought to arbitrate Johnson's claims.

For the pending motion, AxleHire has proffered a copy of an "Independent Contractor Agreement" that it says Davis agreed to when he started driving for the company. Dkt. No. 40-1, Ex. B (the "Agreement"). The Agreement contains an arbitration clause in which the parties agreed to final and binding arbitration for "any disputes, claims, or causes of actions arising out of

1   or relating to contractor's relationship with company," including disputes related to "allegations of
2   contractor misclassification" and "discrimination." *Id.* ¶ 12. The arbitration is to be administered
3   under JAMS procedures, and the Agreement is governed by the Federal Arbitration Act ("FAA").
4   *Id.* ¶¶ 12.6, 12.9.

5   The first page of the Agreement states that it was entered into between AxleHire and Davis
6   in October 2016. The last page contains an acknowledgment that by "clicking 'I accept,'" Davis
7   read, understood, and agreed to the Agreement. Davis's name, an IP address, and the words
8   "CONTRACTOR AGREED AND SIGNED" follow the acknowledgment. *See id.* at 3.

9   AxleHire submits as additional evidence a declaration stating that Davis, like all new
10  AxleHire drivers, had to complete the following steps at sign-up: (1) create an account and
11  password, (2) scroll through the agreement, (3) press "I ACCEPT," (4) type his name into the
12  Agreement, and (5) press "E-SIGN." Dkt. No. 40-1 ¶¶ 5-10. Davis confirms that the Agreement
13  was "provided to him on or around October 20, 2016." Dkt. No. 42 at 2.

## DISCUSSION

15  AxleHire moves to compel arbitration under the FAA, and Davis does not dispute that it
16  applies here. The FAA's "'overarching purpose . . . is to ensure the enforcement of arbitration
17  agreements according to their terms so as to facilitate streamlined proceedings.'" *Alonso v.*
18  *AuPairCare, Inc.*, No. 3:18-CV-00970-JD, 2018 WL 4027834, at *1 (N.D. Cal. Aug. 23, 2018)
19  (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011)). Under Section 4 of the
20  FAA, "the district court's role is limited to determining whether a valid arbitration agreement
21  exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v.*
22  *Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

23  Davis does not contend that his claims are outside the scope of the arbitration clause. *See*
24  Dkt. No. 42. His sole contention is that the parties never formed a contract to arbitrate, and he
25  puts particular emphasis on the fact that an electronic signature for Davis is missing from the
26  Agreement. *Id.* at 2.

27  The contract formation principles that apply here are straightforward. Whether the parties
28  agreed to arbitrate their claims is a matter of contract interpretation. "[A] party cannot be required

to submit to arbitration any dispute which he has not agreed so to submit." *Norcia v. Samsung Telecomm. Am., LLC*, No. 14-CV-00582-JD, 2014 WL 4652332, at *3 (N.D. Cal. Sept. 18, 2014) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)), *aff'd*, 845 F.3d 1279 (9th Cir. 2017). "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quotation omitted). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* (quotation omitted).

California state law governs the formation issue, and AxleHire bears the burden of "'proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia*, 845 F.3d at 1283 (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)); *see also Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Norcia*, 845 F.3d at 1284 (quotation omitted). An offeree's consent to the terms of a contract may be inferred based on conduct consistent with acceptance. *Norcia*, 2014 WL 4652332, at *4.

AxleHire suggests that the issue of contract formation has been delegated to an arbitrator, but the contention is not well taken. To start, it begs the question of whether the parties formed a contract. Reliance on a delegation clause assumes a binding contract was formed, which simply elides the issue in dispute here.

Even more to the point, AxleHire's position is not consonant with the law. It is certainly true that the Agreement's arbitration clause incorporates the JAMS rules, which delegate to the arbitrator questions of arbitrability. Dkt. No. 40-2, Ex. A, Rule 11(b); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."). But, while "challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very

3

existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (citing *Three Valleys*, 925 F.2d at 1140-41) (other citations omitted); *see also Galilea LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1056 (9th Cir. 2018) (same). Consequently, the Court will decide the formation question.

Based on the evidence presented with the motion, which Davis does not meaningfully challenge, there is no doubt that the parties entered into the Agreement. Davis claims that he never signed or otherwise agreed to the Agreement, but he proffers no facts, declaration, or any other evidence in support of this contention. Instead, he faults AxleHire for having no record of his signature. Dkt. No. 42 at 2. That is his main reason for opposing arbitration.

AxleHire does not disagree that Davis's signature is missing, but the omission is of no moment for the formation question. That is because AxleHire has presented an abundance of evidence showing that Davis did, in fact, agree to the Agreement. Specifically, AxleHire has demonstrated that Davis went through five steps at sign-up, including pressing "I ACCEPT," typing his name into the Agreement, and pressing "E-SIGN," that manifested his acceptance of the Agreement. Dkt. No. 40-1 ¶¶ 5-10. The Agreement also bears his name, IP address, and words of acknowledgment and approval of the contract. Taken together, these are unmistakable indicia of consent. AxleHire has tendered evidence, again undisputed, indicating that Davis's signature may be missing due to a technical malfunction. *Id.* ¶ 6.

These circumstances distinguish away *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836 (2014), on which Davis heavily relies. AxleHire has established how Davis's name, IP address, and time and date of approval came to appear on the Agreement and in AxleHire's records, and how those markers indicate Davis's consent. Dkt. No. 40-1 ¶¶ 7-10. Mutual assent to the Agreement can also be inferred from Davis's receipt of the Agreement and decision to accept its benefits by driving with AxleHire for several years. *Norcia*, 845 F.3d at 1285.

That resolves Davis's primary objection to arbitration. He makes a passing reference to not "seeing" the Agreement, Dkt. No. 42 at 6, but what that means is not explained. To the extent Davis suggests he didn't read the arbitration provisions, he is still bound by them. *Smith v. SMX, LLC*, No. 18-CV-01903-JD, 2019 WL 720984, at *1 (N.D. Cal. Feb. 20, 2019); *Pinnacle Museum*

*Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."). His reference to the contract being "unfair" or "inequitable" is also completely undeveloped and not tied in any meaningful way to the formation dispute. Dkt. No. 42 at 3. Davis's mention of a proposed California Assembly bill is no basis for finding that a contract was not formed between the parties.

## CONCLUSION

The motion to compel is granted. Any issues of validity and enforceability with respect to the Agreement are delegated to the arbitrator. The parties are directed to provide the Court with joint status updates on the arbitration proceedings every 90 days from the date of this order.

**IT IS SO ORDERED.**

Dated: April 30, 2019

JAMES DONATO
United States District Judge